EX PARTE JAMES PIERCE AND RAYMOND J. BEALL.

No. A-8094. Decided January 11, 1961.
Rehearing Overruled February 15, 1961.
(342 S.W. 2d Series 424)

*Mullinax, Wells, Morris & Mauzy and L. N. D. Wells, Jr.,* all of Dallas, for relators.

*William L. Clay, Jr., Ramey, Brelsford, Hull & Flock, Jack W. Flock* and *Richard Grainger,* all of Tyler, for respondent, General Electric Company.

MR. CHIEF JUSTICE CALVERT delivered the opinion of the Court.

Relators seek by writ of habeas corpus to secure relief from fines and terms of imprisonment in jail imposed on them as punishment for contempt. They were adjudged guilty of contempt for violating the terms of a restraining order issued by the District Judge of the 114th Judicial District. We ordered relators released from custody pending determination of the validity of the contempt judgment.

On October 2, 1960 General Electric Company's local plant near Tyler, known as General Electric Air Conditioning Department, was struck by its employee-members of Local Union 782 of the International Union of Electrical, Radio and Machine Workers, A.F.L.-C.I.O. Pickets were posted at the entrance to the plant. On October 14 the district judge, acting in chambers and pursuant to General Electric Company's verified petition, issued an ex parte restraining order restraining the members of the national and local unions and certain named individuals, including relators Pierce and Beall, from committing some fourteen different acts. Only numbered paragraphs (1), (2) and (7) of the order are important to our discussion inasmuch as only the acts there restrained were found in the contempt judgment to

have been committed in violation of the order. Those paragraphs read as follows:

"(1)  Unlawfully obstructing the free ingress and egress of vehicles and persons into and from the premises of the General Electric Company Air Conditioning Department, located on the Troup Highway, Smith County, Texas, being the premises now picketed by the Defendants."

"(2)  Unlawfully delaying the entrance and exists of vehicles and persons into and from the premises of said General Electric Company Air Conditioning Department, located on the Troup Highway, Smith County, Texas."

"(7)  Unlawfully obstructing the traffic on Highway 110 in front of the company's premises so as to create a menace and danger to the health and safety of citizens of this State traveling upon and using said State Highway 110."

On October 19 show cause orders were entered, pursuant to affidavits of contempt, directing relators to appear and show cause why they should not be adjudged in contempt for violating the restraining order on October 17. Following a trial, each of the relators was adjudged to have violated the restraining order in the following respects:

"(1)  He did on October 17, 1960, unlawfully obstruct the free ingress and egress of vehicles and persons into and from the premises of General Electric Company Air Conditioning Department, located on the Troup Highway, Smith County, Texas, being the premises then picketed;"

"(2)  He did on October 17, 1960, unlawfully delay the entrances and exists of vehicles and persons into and from the premises of General Electric Company Air Conditioning Department located on the Troup Highway, Smith County, Texas;"

"(3)  He did on October 17, 1960, obstruct and attempt to obstruct the free use of the streets and highway adjacent to the Company's place of business and he did obstruct the free ingress and egress to and from the Company's premises;"

Relators recognize that they cannot secure relief in a habeas corpus proceeding unless the contempt judgment is void. They assert in their brief that the judgment is void because the restraining order itself is void, in that: (1).  The trial court had no

jurisdiction to enter it. (2). It violates constitutional rights of free speech and assembly. (3). It is too vague and general in its terms. (4). It is not supported by proper bond.

■ The contention that the trial court had no jurisdiction to enter the restraining order is based upon relator's further contention that inasmuch as the employer's business is in or affects interstate commerce, jurisdiction of the subject matter of the strike and picketing is preempted to the National Labor Relations Board by certain sections of the Taft-Hartley Law. Granting that is true if the picketing prior to the entry of the restraining order had been peaceful, it is not true if the evidence before the court would support a conclusion that the order was necessary to preserve the public peace and welfare against interference with free ingress and egress of non-striking employees and others to the plant or the obstruction of travel on the adjacent public highway. Youngdahl v. Rainfair, 355 U.S. 131, 2 L. Ed. 2d 151, 78 Sup. Ct. 206; United A. A. & A. I. Workers v. Wisconsin Emp. Rel. Board, 351 U.S. 266, 100 L. Ed. 1162, 76 Sup. Ct. 794. In *Youngdahl* the Supreme Court of the United States upheld jurisdiction of a state court to enjoin "strikers and union representatives 'from obstructing, or attempting to obstruct the free use of the streets adjacent to [the employer's] place of business, and the free ingress and egress to and from [the employer's] property'." In *United A. A. & A. I. Workers* the Court upheld jurisdiction of the Wisconsin Employment Relations Board to enjoin the unions, their officers, members and agents from "Obstructing or interfering in any way with entrance to and egress from the premises of the Kohler Company" and from "Obstructing or interfering with the free and uninterrupted use of public roads, streets, highways, railways or private drives leading to the premises of the Kohler Company." Jurisdiction of the state courts and agencies was upheld in both cases over protest that jurisdiction of the subject matter had been preempted to the NLRB by the Taft-Hartley Act.

■ Relators seem to argue that there was no evidentiary basis for the restraining order. Rule 680, Texas Rules of Civil Procedure, authorizes the granting of restraining orders, without notice, upon verified petition setting out facts showing that, unless granted, immediate and irreparable injury, loss, or damage will be done to the applicant. The rule contemplates that restraining orders will be granted only in cases of emergency, and that in the absence of good cause for extension they will have life only for a necessary brief period in which notice can be given and a hearing on an application for temporary injunction can be held. Neces-

sarily, an application for a restraining order is addressed largely to the discretion and good judgment of the trial judge. He will grant or deny an ex parte restraining order according as the need for it may appear from the verified facts contained in the petition. The only evidence before him is the verified facts in the petition. If that evidence supports the order and the court has jurisdiction of the subject matter, it must be obeyed. Disobedience of it is not justified or excused because evidence developed on a contempt hearing may disclose that the facts verified in the petition were not true.

■  The verified petition on which the restraining order was granted in this case contains the following allegations or statements of fact:

"(1)  Defendants' pickets are obstructing the free ingress and egress of vehicles into and from the premises of the Company by placing their persons directly in front of such vehicles and in such manner preventing the free passage of the vehicles, resulting in unreasonable delay in obtaining lawful entrance and exits therefrom.

"(2)  That certain members of said Unions are deliberately placing their vehicles upon said Highway 110 directly in front of the picketed premises so as to constitute an obstacle to the free ingress and egress of the Company's premises and preventing other citizens from freely entering and leaving such premises.

"(5)  The Defendants are obstructing the traffic on said Highway 110, thereby creating a menace and a clear and present danger to the health and safety of the public of this State, traveling upon and using said State Highway."

While those allegations or statements of fact may not be as specific as they might have been, they are not so conclusional in character as to render the restraining order void. They are the evidence upon which paragraphs (1), (2) and (7) of the restraining order was based, and they are adequate to support the jurisdiction of the court over the subject matter. Youngdahl v. Rainfair, supra; United A. A. & I. Workers v. Wisconsin Emp. Rel. Board.

What has been said disposes of the first two grounds on which relators attack the validity of the restraining order. Constitutional protection of the rights of free speech and free assembly does not license interference with and obstruction of public ways or of

entrances to and exits from places of business. Ex Parte Henry, 147 Texas 315, 215 S.W. 2d 588, is not in point on the facts and, therefore, is not controlling. The injunction in that case restrained striking employees from picketing "on, across, at or near or within 100 feet of the railroad tracks" being used to transport freight into and from the employer's plant. This court held that in so far as the judgment attempted to restrain peaceful picketing at, near, across or within 100 feet of the railway tracks, it was void. Our conclusion in that respect was based upon our holding that "So long as the pickets did not physically obstruct the spur tracks and thereby nullify or seriously impair the right of the railways to use the street, they had the same right to use the street as the railways had." Another part of the injunction restrained picketing at or near the railway tracks "in such manner as to prevent the railway employees from serving the plant." In so far as the judgment of contempt rested upon a violation of that part of the injunction, we held it void because the evidence on the trial established that the picketing "constituted no physical obstruction to anybody going into or coming out of the plant."

The contention that the restraining order in this case was void because it was too general and vague is based upon the trial court's use of the word "unlawfully" in setting out the acts and conduct restrained. A further complaint is that the notice served on relators contained the same vice of generality. It is argued that by the wording of the order relators were left free to obstruct ingress and egress to the plant, to delay entrances and exits of persons to and from the premises, and to obstruct traffic on Highway 110, so long as such conduct did not reach the stage of being unlawful, and that they had no means of determining to what extent such conduct was lawful and to what extent it was unlawful. Such generality in the notice, it is argued, was a denial of procedural due process. In support of their position relators cite Hopkins v. Frenchy, Texas Civ. App., 75 S.W. 2d 184.

■ We do not interpret the trial court's use of the word "unlawfully" as do relators. Except for the use of the word "unlawfully," the language used by the trial court in defining the conduct restrained is almost identical with that used in restraining similar conduct in *Youngdahl* and *United A. A. & A. I. Workers*. Any conduct by pickets which obstructed "the free ingress and egress of vehicles and persons into and from the premises," or which unreasonably delayed "the entrances and exits of vehicles and persons into and from the premises," or which obstructed "the traffic on Highway 110 so as to create a menace and danger to the health and safety of the citizens," was unlawful in the sense

that it was conduct which the courts would not countenance or permit. We interpret the trial court's use of the word "unlawfully" as indicating that the conduct restrained was regarded by the court as being unlawful. The order condemned in Hopkins v. Frenchy restrained police of the City of San Antonio from "unlawfully" interfering with the plaintiffs' "lawful" operation of their restaurant and soft drink business. The orders are obviously not the same.

Relators' claim that the restraining order bond was void is based on the fact that the evidence does not show formal authority of the agent who executed the bond on behalf of the principal. The bond was executed on behalf of General Electric Company by Tom Sproule, general manager of the plant at Tyler. He testified that he was authorized to execute the bond by legal counsel for the principal. Absence of more formal authority does not invalidate the bond.

Although no such point is contained in their brief, relators seem to argue there, as they undoubtedly did in oral argument, that there was no evidence adduced at their trial supporting the judgment of contempt. Our only right to review the evidence is for the purpose of determining whether relators have been deprived of their liberty without due process of law. If there is in the record evidence from which the trial court could conclude that they violated the restraining order, they have not been denied due process. Ex Parte Helms, 152 Texas 480, 259 S.W. 2d 184, 186; Ex Parte Morris, 147 Texas 140, 215 S.W. 2d 598. There is ample evidence to suport the trial court's conclusion. We will content ourselves with a brief summary of it.

General Electric's plant is located just North of Highway 110 which connects Tyler, situated some four or five miles West of the plant, with Troup, some eleven or twelve miles East of the plant. A private roadway leads from Highway 110 to the main entrance to the plant. Employees and others traveling East from Tyler and wishing to enter the plant premises had to make a left turn from the South traffic lane across the North traffic lane to enter the private road. Union pickets stationed themselves just inside the North right-of-way of Highway 110, one to the East and one to the West of the private road entrance, and walked back and forth across the entrance, passing each other near the center of the entrance. Relator Pierce was on picket duty during early morning hours when non-striking employees were arriving for work. Relator Beall was on picket duty in the afternoon when non-striking employees were leaving the plant.

There is testimony that the pace of Pierce and the other morning picket was so slow and deliberate as to back up some 25 or 30 automobiles approaching from Tyler and intending to enter the plant premises; that the interval between the crossing of the pickets and their return was so brief that only one automobile could pass; that highway patrolmen were forced to hold up traffic traveling in a westerly direction to permit turning of the slow moving traffic across the North lane of the highway and into the plant entrance; that "the traffic coming from Tyler was blocked considerably"; that there was a similar slow-down of automobiles leaving the plant at the end of the work day; that "the vehicles were held up repeatedly, both before and after 8:00 A.M."

With reference to the particular conduct of relators on October 17: "Mr. Beall and Mr. Pierce walked the picket line in a very erratic manner, to my way of thinking, slowing at times, holding up traffic as a consequence. Going through certain gyrations. * * * Mr. Beall seemed to be having leg trouble at times. He would reach down and rub his leg and then look over at the audience across the street and there would be applause more or less from there. * * * He was in front of automobiles that were being held up, trying to leave in the afternoon—leave the plant. * * * Mr. Beall had leg trouble. At occasional intervals he would stop and hold his leg and raise it and knead the muscles; and he also had some extremely short walking right in front of cars, stopped, turned back a couple of paces, stopped again, stop—back and forth repeatedly. * * * Mr. Pierce also went through actions that were quite interesting. Everyone seemed to be watching them because of the fact that they did have these troubles in walking picket line. * * * Mr. Pierce, he also held up traffic. At one time, dropping his sign, as I recall it, right in front of the vehicles, reaching over slowly and picking it up; and also indicating it hurt his back, and holding over like this, and again to the cheers from across the street—traffic being held up all this time. * * * And Mr. Pierce, as I recited I believe earlier, dropped his sign at one time and seized his side as though he had been injured, or had pulled a muscle or something like that, and stopped the traffic at that time. * * * They were among our slowest pickets, Judge."

A newspaper reporter attended an early morning rally of striking employees on the morning of the 17th. At the rally he saw Pierce hold up what he identified as the restraining order and heard him refer to it as "a piece of trash." He also heard Pierce state at the rally that the district judge who issued the restraining order "had been bought and paid for by General Electric."

■ The restraining order had been granted by the regular judge of the 114th Judicial District. The contempt trial was conducted by a visiting judge. Relators could not be punished for what was said at the rally because they were not cited for contempt on that ground, but the trial judge had the right to consider what was said by Pierce at the rally as shedding light on the conduct of relators in the picket line—whether the injured leg and the strained back were simulated or real, and whether the deliberate pace of the pickets was the product of a contemptuous attitude.

Relators are remanded to the custody of the Sheriff of Smith County until released according to the terms of the judgment of contempt.

Associate Justice Steakley not sitting.

Opinion delivered January 11, 1961.

Rehearing overruled February 15, 1961.