**Ex parte, Stephen F. HEFNER, Petitioner.**

**No. TY–84–454–CA.**

United States District Court, E.D. Texas, Tyler Division.

Oct. 22, 1984.

---

Phil Burleson, Dallas, Tex., Kelly Ireland, Ireland, Carroll & Kelley, Tyler, Tex., for petitioner.

David K. Wilson, Asst. County Atty., Sherman, Tex., for Grayson County.

Scott Pelley, Sherman, Tex., amicus curiae for the Estate of Mary Ellen Bader.

## ORDER

STEGER, District Judge.

This proceeding involves a collateral attack upon a contempt judgment entered by a state court. Before the Court is the Petition for Writ of Habeas Corpus filed by Stephen F. Hefner, petitioner in the above entitled and numbered action. The Court has duly considered said petition, the briefs in support thereof, and the evidence submitted by petitioner at the evidentiary hearing on his application and is of the opinion that the petition should be denied and that the writ should not issue for the following reasons.

This case was instituted by petitioner on October 5, 1984, pursuant to 28 U.S.C. § 2254. It arises out of a guardianship matter currently pending in the County Court at Law No. 2 of Grayson County, Texas, hereinafter referred to as the "county court." On January 6, 1984, Walter H. Bader, Jr., petitioned the county court to appoint him as temporary guardian of the person and of the estate of his mother, Mary Ellen Bader. Authority for this appointment was founded upon Tex.Prob. Code Ann. § 131 and § 133 (Vernon 1980)[1]. This application was granted January 6, 1984 and the guardian's oath and bond were filed that same day. *See* Petitioner's Hearing Exhibit No. 1 pg. 7. On February 10, 1984, petitioner entered an appearance in this matter on behalf of Mary Ellen Bader and contested the appointment of the temporary guardian. *See* Petitioner's Hearing Exhibit No. 1, pgs. 88–91. The guardian filed an application to make the temporary guardianship permanent and a complaint against petitioner and Mary Ellen Bader requesting them to deliver certain property to the estate. Petitioner's Hearing Exhibit No. 1 pgs. 24–31, 94–5. Both of these filings were opposed by petitioner on behalf of Mary Ellen Bader on April 5, 1984. Petitioner's Hearing Exhibit No. 1 pgs. 21–23, 98–102. In the above mentioned motions and responses filed on behalf of Mary Ellen Bader, petitioner has unwaveringly asserted that the county court has no jurisdiction to entertain this guardianship because probate code sections 131 and 133 are unconstitutional insofar as

1. TEMPORARY ADMINISTRATION IN THE INTEREST OF (A) ESTATES OF DECEDENTS, AND (B) PERSONS OR ESTATES OF MINORS AND INCOMPETENTS

§ 131. Procedure

(a) Necessity of Appointment. Whenever it appears to the county judge that the interest of a decedents estate, or the interest of any minor, person of unsound mind, or common or habitual drunkard, and his or her estate, or either of them, requires immediate appointment of a personal representative, he shall, by written order, appoint a suitable temporary representative, with such limited powers as the circumstances of the case require, and such appointment may be made permanent, as herein provided.

(b) Manner of Appointment. Such appointment may be made with or without written application and without notice or citation. The order shall designate the appointee appropriately as "temporary administrator" of the decedent's estate, or a "temporary guardian" of the person or of the estate, or both, of such minor, person of unsound mind, or common or habitual drunkard, fix the bond to be given and define the powers conferred on the appointee. When any such appointed has taken and filed his oath and filed with the county clerk a bond approved by the court, the clerk shall issue to the appointee letters which shall set forth the powers to be exercised by the appointee.

(c) Perpetuation of Appointment. The order making the appointment shall state that, unless the same is contested after service of citation, it shall be continued in force for such period of time as the court shall deem in the interest of the estate or person involved, or it shall be made permanent, if found by the court to be necessary.

(d) Citation Relative to Perpetuation. Immediately after such appointment the clerk shall issue and cause to be posted a notice, and if necessary issue citations, to all interested persons to appear at the time stated in such writ and contest said appointment if they so desire; and such notice or citation shall state that, if no contest is made, the appointment will be continued for such time as appears to the interest of the estate or person involved, or that, if found necessary by the court, it shall be made permanent.

(e) Contest. If the appointment is contested, the court shall hear and determine the same, and, during the pendency of such contest, the temporary appointee shall continue to act as such. If the appointment is set aside, the court shall require the appointee to prepare and file, under oath, a complete exhibit of the condition of the estate which has come into his possession and show what disposition he has made of the same or any portion thereof.

§ 133. Powers of Temporary Appointees

(a) Temporary Administrators. Temporary administrators shall have and exercise only such rights and powers as are specifically expressed in the order of the court appointing them, and as may be expressed in subsequent orders of the court. Where a court, by a subsequent order, extends the rights and powers of a temporary administrator, it may require additional bond commensurate with such extension. Any acts performed by temporary administrators that are not so expressly authorized shall be void.

(b) Temporary Guardianships. All the provisions of this Code relating to the guardianship of persons and estates of minors, persons of unsound mind, and habitual drunkards shall apply to temporary guardianship of the persons and estates of such persons, in so far as the same are applicable.

they dispense with the requirements of prior notice and an opportunity to be heard before the guardianship may be established.

A second complaint requesting petitioner to deliver property to the estate was filed by the guardian on August 22, 1984. Petitioner's Hearing Exhibit No. 1, pgs. 379–381. On August 24, 1984, the county court ordered that the complaint would be heard in open court on October 1, 1984.

At this hearing petitioner was called as a witness. He was asked by guardian's counsel if he had received approximately $67,000.00 worth of cash and travelers checks belonging to the estate of Mary Ellen Bader subsequent to the time she was placed under a guardianship by the county court. The specific question, as set forth in the county court's Judgment of Contempt, was: "Mr. Hefner, would you tell us whether or not you received from Mary Ellen Bader subsequent to the time that she was placed under a guardianship by this court the sum of $67,000.00 in cash and in travelers checks?" To which question petitioner responded, according to the Judgment of Contempt, as follows: "I refuse to answer the question on the ground that it would violate the attorney-client privilege." The county court judge then ordered the petitioner to answer the question. Petitioner refused to comply with the county court's order. The county court thereupon declared petitioner to be in contempt of court and ordered him confined to the Grayson County Jail until such time as petitioner purged himself of contempt by answering the question he had previously been ordered to answer by the county court.

The Judgment of Contempt and commitment order were entered by the county court on October 2, 1984. Petitioner was thereafter incarcerated in the Grayson County Jail. That same day Mr. Hefner petitioned the county court for a writ of habeas corpus and a request for setting of bond and a hearing, and same was denied. On October 3, 1984 an application for writ of habeas and a request for bond and a hearing was presented to the judge of the 15th Judicial District Court in Grayson County, Texas, and same was thereafter denied. Subsequently, still on October 3, an application for writ of habeas corpus and request for a bond and a hearing were presented to and denied by the Supreme Court of Texas. As stated previously, petitioner then filed the instant petition for habeas corpus with this Court on October 5, 1984.

In his petition, Mr. Hefner contends that he is being illegally confined and restrained of his liberty by respondent because the judgment of contempt and commitment issued by the county court is void, illegal and/or a violation of due process under both the Texas and United States Constitutions because of the following reasons:

1. Petitioner would show that the order entered by the county court on October 2, 1984, violates the United States and Texas Constitutions as an impermissible imprisonment for a debt, and is further violative of V.A.T.C.S. Art. 1911a, as amended, in that the order of incarceration is for an indefinite period of time, and, therefore, exceeds the jurisdiction of the rendering court, and as such, is void under said constitutional provisions.

2. The county court issued said order on October 2, 1984, pursuant to jurisdiction which it does not have since the order of January 6, 1984, appointing a guardian, is void for the reason that no service of process was had or attempted on the alleged ward, Mary Ellen Bader, and/or the Texas Probate Code is unconstitutional if it provides for no service of process on an alleged incompetent who is at the time of such hearing not a resident of the State of Texas. Since the county court did not have jurisdiction of the person of Mary Ellen Bader, the alleged ward, the court did not have jurisdiction to conduct the hearing where the alleged contempt occurred and did not have the power to order petitioner to answer questions concerning property over which it had no jurisdiction.

3. The manner in which the commitment was issued violates due process in that no hearing thereon was granted to petitioner for issuance thereof and the issuance thereof is void since it cannot be determined whether the punishment for contempt is civil, criminal and/or a combination of both.

The first and third grounds raised above may be disposed of briefly.

■ The first ground contains two separate arguments. The first alleges that Petitioner has been incarcerated for non-payment of a debt. This allegation is never explained. Petitioner was held in contempt for refusing to answer questions directly related to a proceeding then before the trial court. The commitment was only indirectly related to a debt.

■ The second argument in the first ground is that petitioner's incarceration is in violation of a state statute. *See* Tex. Rev.Civ.Stat.Ann. art. 1911a (Vernon Supp. 1984). It is unclear how this argument, even if true, raises a constitutional issue. Upon examination of the statute, it is apparent that the trial court did not violate its provisions. Since petitioner was held in contempt while testifying as a witness, he may not claim the benefits of § 2(c) of the statute. A trial court may hold a person in contempt and confine him indefinitely until that person obeys a court order. Tex.Rev. Civ.Stat.Ann. art. 1911a, § 3. There is a maximum time limit of six months for incarceration. Tex.Rev.Civ.Stat.Ann. art. 1911a, § 2(a). The only other restriction is that the order must clearly specify the actions necessary for the contemnor to purge himself of the contempt. *See Ex parte Choate*, 582 S.W.2d 625, 627 (Tex. Civ.App.—Beaumont 1979, no writ). The order was sufficiently precise in this case: Petitioner was required to answer the questions asked of him.

■ The third ground for voiding the contempt order also contains two arguments. The first argument is that petitioner should have been granted a hearing prior to the judgment of contempt. A hearing is required only when the contempt was committed outside the presence of the court. *See, e.g. Ex parte Norton*, 610 S.W.2d 512, 513 (Tex.Crim.App.1981). In this case, the contempt occurred in open court, and no hearing was required.

■ The second argument of the third ground seeks to void the contempt order because it is unclear whether the order is for civil or criminal contempt or both. No reason is given suggesting why such an omission is fatal, and the Court finds none.

The second ground raised by petitioner is of a more problematic nature. This portion of his collateral attack is premised upon the suggestion that the contempt judgment entered against him by the county court is void. Petitioner claims the judgment is void because the hearing at which he was adjudged to be in contempt of court was convened in aid of a statutory proceeding (the § 131 temporary guardianship) which is in violation of the United States Constitution. The specific claim of unconstitutionality is that Mary Ellen Bader's right to the procedural and substantive due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution, has been denied in that her estate and her person have been subjected to a guardianship without prior notice of such application and a corresponding opportunity to be heard in opposition to the application; and that her person and estate have been subjected to plenary third party control without a showing of a compelling state interest justifying this degree of control and without a showing that a less restrictive method of control would achieve the desired results. Because of these alleged constitutional infirmities in the § 131 temporary guardianship procedure, petitioner contends that any directive or order issued in connection therewith, or any proceeding or hearing had in aid thereof, is absolutely void. If the October 2 hearing was void as a matter of law, any judgment of contempt stemming from a refusal to obey a court order issued at this hearing is, *a fortiori*, void as a matter of law. This ground for relief presents an ingenious argument and

one that, at first reading, appears to demonstrate that petitioner may be entitled to this Court's writ. Upon closer examination, however, the Court has noted a flaw in petitioner's reasoning which the Court believes operates to defeat this final theory of relief.

At the outset, the Court would note that petitioner is entirely correct in his assertion that a successful collateral attack may be waged against a contempt judgment that is void. A habeas corpus proceeding is a collateral attack on a judgment of contempt, and one may be relieved of its impositions only if the judgment is void. *Ex parte Thetford*, 369 S.W.2d 924, 925 (Tex.1963); *Ex parte Rhodes*, 163 Tex. 31, 32, 352 S.W.2d 249 (1962); *Ex parte Kidd*, 156 Tex. 282, 294 S.W.2d 705 (1956); *Ex parte Sentell*, 153 Tex. 252, 266 S.W.2d 365 (1954); *Ex parte Helms*, 152 Tex. 480, 259 S.W.2d 184 (1953). "For this court to order the release of [petitioner], the trial court's contempt order must be void; i.e., *beyond the power of the court to enter.*" *Ex parte Gorena*, 595 S.W.2d 841, 843 (Tex. 1979) (emphasis supplied). In other words, a court must have had jurisdiction to enter the order that led to the contempt. *See e.g. Ex parte Henry*, 147 Tex. 315, 215 S.W.2d 588, 597 (1948) (granting writ of habeas corpus to release contemnors held in violation of a void injunction prohibiting picketing within 100 feet of railway tracks); *Ex parte Wagley*, 530 S.W.2d 609, 611 (Tex. Civ.App.—Houston (14th) 1975, no writ) (granting writ of habeas corpus to release contemnors committed because they ignored an amended judgment which the court had no jurisdiction to amend); *McCullough v. McCullough*, 483 S.W.2d 869, 871 (Tex.Civ.App.—Tyler 1972, no writ) (reversing judgment of contempt for refusal to pay support for children over age eighteen since court had no jurisdiction to enter such an order).

In attacking the contempt adjudication made against him, petitioner contends the county court did not have the necessary power or authority to enter any order, much less a judgment of contempt, in connection with the guardianship proceeding in question because said guardianship was established in direct contravention of rights secured to Mary Ellen Bader by the United States Constitution. The Court agrees with petitioner that a person is entitled to a discharge from custody via a writ of habeas corpus when that person's due process rights are being denied. *See Ex parte Peterson*, 444 S.W.2d 286, 289 (Tex.1969); *Ex parte Hosken*, 480 S.W.2d 18, 20 (Tex. Civ.App.—Beaumont 1972, no writ). Yet in this case, it is not petitioner's due process rights that are perhaps being denied, but Mrs. Bader's.

Petitioner's conclusion that he may freely assert the denial of another person's constitutional rights as justification for a refusal to discharge an obligation that devolves solely upon himself is ill-conceived. Stated differently, the Court does not believe that petitioner can lawfully refuse to answer a question put to him in a court proceeding because he believed that the court proceeding could possibly be in violation of some other individual's constitutional rights. Although some person's constitutional rights may, in fact, be adversely affected by the court proceedings, a third person, such as petitioner Hefner, would not have "standing" to assert these violations as grounds for obtaining personal habeas relief. The reason for this conclusion is explained below.

Standing to sue is an element of the federal constitutional concept of the "case or controversy" requirement of Article III. A precise definition of its theoretical contours has been attempted by the Supreme Court but not, as of yet, completely achieved. "We need not mince words when we say that the concept of 'Art. III standing' has not been defined with complete consistency in all of the various cases decided by this Court which have discussed it, nor when we say that this very fact is probable proof that the concept cannot be reduced to a one-sentence or one-paragraph definition." *Valley Forge Christian College v. American's United for Separation of Church and State, Inc.*, 454 U.S. 464,

475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). However, it has been stated that "at an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Id.* at 472, 102 S.Ct. at 758 (citations omitted).

A fair argument may be made that petitioner possesses the requisite standing under this liberal definition. However, even when the Article III requirements are met, "a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–1608, 60 L.Ed.2d 66 (1979). Three such prudential rules that have been identified are that plaintiff's interest must come within the "zone of interests" arguably protected or regulated by the law in question,[2] that the courts will not hear "generalized grievances" shared in substantially equal measure by all or a large class of citizens,[3] and that plaintiff must assert his own legal interests rather than those of third parties.[4] It is this third prudential consideration that is fatal to the attainment of the relief petitioner seeks from this Court.

Standing has been loosely stated to be whether "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). The justiciable controversy petitioner has sought to raise in this cause is whether or not Mary Ellen Bader's fourteenth amendment rights have been violated by the establishment of a guardianship over her person and her estate pursuant to section 131 and 133 of the Texas Probate Code. Petitioner has raised this issue in this cause in his own behalf. However, petitioner has consistently raised this exact same issue on behalf of Mary Ellen Bader in the county court, months before the instant action was ever instituted. The Court does not believe that petitioner has a sufficient stake in the question of whether or not sections 131 and 133 are constitutional to force a judicial resolution of that controversy at this time and in this Court. As just mentioned, this identical question has been raised in the courts of the State of Texas by Mary Ellen Bader in a proceeding wherein the resolution of the question will have a direct and important impact on her life. The Court can conceive of no better example of the Supreme Court's "injury in fact" requirement than Mary Ellen Bader's pending challenge of section 131 and 133 in the county court.[5] Any injury that petitioner may have sustained as a result of the application of sections 131 and 133 is purely derivative of the primary injury suffered by Mary Ellen Bader. Therefore, the Court believes that prudential considerations prohibit petitioner from possessing the requisite standing to litigate the constitutionality of sections 131 and 133.

This is not to say that third parties will never be allowed to assert the constitution-

---

**2.** *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

**3.** *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

**4.** *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed.2d 603 (1943).

**5.** To meet the requirement of an injury in fact a party must allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the Court so largely depends for illumination of difficult ... questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

al rights of others. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (upholding standing of beer vendor to invoke the rights of male beer buyers in challenging a state law forbidding sale of 3.2% beer to males under 21 but permitting such sale to all females over 18); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (distributor of contraceptives challenging the constitutionality of a state law banning the distribution of such devices to unmarried person was allowed standing to assert the right of the unmarried users). However, in this cause petitioner is not attempting to assert the constitutional rights of others for *their* benefit, as is the case in the above cited authority. Instead, petitioner is attempting to assert the constitutional rights of a third person (Mary Ellen Bader) chiefly for *his* benefit, i.e. asserting her fourteenth amendment rights in order to free himself from the county jail.

The Court would be less than candid if it were to fail to mention that the Supreme Court has made exceptions to its prudential rules regarding third party standing. In *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) a doctor under prosecution for selling contraceptives in violation of state law was allowed to assert the constitutional rights of his patients in order to avoid conviction. In *Buchanan v. Warley,* 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917) a white person was suing for specific performance of his contract to sell real estate to a black person. The black man's defense to the suit was that a city ordinance barred blacks from the area in question. Such an ordinance violated the fourteenth amendment but here the black defendant, whose constitutional rights were violated by the ordinance, was relying on it as a defense, while the white person, whose constitutional rights were not violated by the ordinance, was claiming it to be unconstitutional. The Supreme Court allowed the challenge to be made in spite of this. *See also Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (a parochial school was allowed to attack a statute that would have required public education for all children, though the constitutional rights involved were those of children and their parents).

The Court believes that these cases are all explainable on the ground that the rule against relying on the rights of others is a rule of judicial self-restraint, not part of the constitutional requirement of standing (i.e., a prudential consideration) and should not be applied where, as in the cases cited above, it would be difficult if not impossible for the persons whose rights were asserted to present their grievance before any court. *See Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). In this case the Court is persuaded that it is not difficult or impossible for the person whose rights are being asserted (Mrs. Bader) to present her grievance before any court. In fact, as previously noted, she is challenging the alleged denial of her fourteenth amendment rights in a pending lawsuit. The Court believes the facts existing in this case are appropriate for the self-restraining limitations of the Supreme Court's prudential rule regarding the assertion of a third party's constitutional rights. Specifically, the constitutional issue has been raised and preserved by Mary Ellen Bader in a competent court of the State of Texas. This Court believes the appellate courts of Texas are fully capable of considering the constitutionality *vel non* of one of its laws. It would be judicially unwise for this court to circumvent that appellate process by allowing a third party not affected by the law to manufacture a situation whereby the exact same constitutional issue would be raised in a different forum at an earlier time. The Court does not believe this is proper and it will not entertain an issue of this nature raised in that manner.

The reason for disallowance of claims akin to those raised by petitioner under the facts of this case are clear. For example, suppose an unwilling prosecution witness refuses to answer questions because his testimony might incriminate the defendant. The witness cannot avoid contempt by

claiming a fifth amendment privilege on behalf of the defendant. By the same token, Hefner cannot avoid contempt by relying on Mrs. Bader's due process rights.

Failure to follow these rules would open the lid to a pandora's box that could totally undermine restrictions against interlocutory appeals. For example, suppose a federal trial court erroneously overrules a motion to dismiss filed in a diversity action by a defendant with no contacts with the forum. During the ensuing trial, a witness for the plaintiff refuses to answer questions while on the stand. The witness is held in contempt and incarcerated. On review under 28 U.S.C. § 2255, the plaintiff's witness argues that the contempt order is void because the court had no jurisdiction over the defendant and, therefore, the proceedings were void because they deprived the defendant of due process of law. Using the formula proposed by petitioner in this case, the court reviewing the § 2255 petition would have to decide the due process and jurisdictional questions involving the defendant in order to set the plaintiff's witness free.

The adverse implications of this concept are clear. There are many times when a court must make a ruling on jurisdiction, venue, joinder of third parties, or similar matters that may be erroneous. Under petitioner's formula, an attorney could procure an early review of the court's decision by committing some contempt and then arguing on a petition for a writ of habeas corpus that the court's ruling deprived his client of due process and the proceedings were therefore void from that point on. The proper time to review due process and jurisdictional questions is on appeal after a final judgment. In the example above, the only way the plaintiff's witness should be allowed to avoid contempt for refusing to answer questions is to assert a valid privilege; he cannot refuse to answer because the rights of a party to the action may have been violated by an earlier ruling of the court.

Petitioner would not be in contempt if there was some privilege that would justify his refusal to answer. He asserted an attorney-client privilege in the county court, but did not mention that in his petition before this Court. He did not claim a fifth amendment privilege, and has thereby waived that issue. He cannot rely on Mrs. Bader's due process rights, yet this is his only other justification for refusing to answer. Absent some privilege afforded by the Constitution, by statute, or by the Texas Rules of Evidence, petitioner must answer the question asked him or suffer the consequences. *See* Tex.R.Ev. 501.

If proceedings under § 131 of the probate code are unconstitutional, it is only Mrs. Bader that has standing to challenge them since it is only Mrs. Bader that suffered any possible injury. Petitioner's "injury" stems from his unwarranted refusal to answer a proper question. If Mrs. Bader had been held in contempt for refusing to obey an order entered under § 131, the result would be very different. In an attempt to find some federal constitutional question that would set him free, petitioner in this case has tried to benefit from the alleged denial of Mrs. Bader's due process rights. The Court is of the opinion that petitioner has no standing to assert Mrs. Bader's rights. Since petitioner has presented no justification for refusing to answer questions in the county court, the petition for writ of habeas corpus must be in all respects DENIED.

It is so ORDERED.