EX PARTE JOSEPH BOYD HELMS.

No. A-4100. Decided June 17, 1953.
Rehearing overruled July 22, 1953.
(259 S. W. 2d Series 184)

*E. T. Miller, Archer & Hazelwood* and *Jack C. Hazelwood,* all of Amarillo, for relator.

Upon the question of relator's inability to pay the installments as they became due, the jurisdiction of the court to commit him to jail, and the validity of the order, relator cites Smithwick v. Smithwick, 218 N.C. 503, 11 S.E. 2d 455; Ex parte De-Wees, 146 Texas 564, 210 S.W. 2d 145; Ex parte Hill, 111 Texas Crim. Rep., 426, 15 S.W. 2d 14; Guercia v. Guercia, 241 S. W. 2d 297.

*Lee Minner,* of Dumas, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Upon a hearing on a show cause order before the District Court of the 69th Judicial District, Moore County, relator, Joseph Boyd Helms, was adjudged guilty of contempt for failing to comply with a judgment of the Superior Court of Los Angeles, California, requiring relator to make monthly payments for the support of his two children, both of whom were under sixteen years of age. We ordered relator released from jail on bond of $500.00 pending a final determination of the questions presented by his application to this court for a writ of habeas corpus.

The contempt judgment imposed a fine of $50.00 and ordered that relator be confined in the county jail until the fine and all costs were paid, allowed a fee of $500.00, taxed as costs, to the attorney representing relator's former wife who filed the contempt proceeding, and further directed that relator be confined

in jail until he purged himself of the contempt by paying into the registry of the court the sum of $5850.00, found to be the total of unpaid support installments.

Relator contends that the judgment committing him is void for the following reasons: (1) There was no evidence before the court that relator was able to make the support payments, all the evidence showing on the contrary an inability to do so. (2) There was no evidence before the court that relator was able to pay the arrearages totalling $5850.00, all the evidence showing on the contrary an inability to do so. (3) The evidence showed that relator was not served with a copy of the support order and had no actual knowledge of the terms thereof. (4) The statute authorizing the contempt judgment did so only if a similar statute authorizing reciprocal remedies existed in California and there was no proof that California had such a statute. (5) The court had no authority to allow the attorney's fee and even if it did that part of the order that required that he remain in jail until the same was paid amounted to an imprisonment for debt in violation of the constitution.

We shall treat the first three contentions together because each of them involves the right of this court to examine the evidence adduced before the trial judge.

■ Undoubtedly involuntary inability to perform a judgment or comply with a court's order is a good defense in a contempt proceeding, and when the record shows inability to perform our courts will order a defendant released. Ex Parte Steinhauser, 133 Texas Cr. R. 166, 109 S.W. 2d 485; Allen v. Woodward, 111 Texas 457, 239 S.W. 602, 22 A.L.R. 1253; Ex Parte Mabry, 122 Texas 54, 52 S.W. 2d 73; Ex Parte De Wees, 146 Texas 564, 210 S.W. 2d 145. On the other hand, it is well established that a proceeding of this nature is a collateral attack on the contempt judgment and this court may order the contemner released only where the judgment is void because of lack of jurisdiction in the court to render it, or because the contemner was deprived of his liberty without due process of law which in itself involves a want of jurisdiction. This court has no jurisdiction in an original habeas corpus proceeding to weigh the evidence adduced in the contempt proceeding for the purpose of determining whether it preponderates against the judgment. Ex Parte Lipscomb, 111 Texas 409, 239 S.W. 1101; Ex Parte Olson, 111 Texas 601, 243 S.W. 773; Ex Parte Westbrook, 126 Texas 1, 84 S.W. 2d 700; Ex Parte Genecov, 143 Texas 476, 186 S.W. 2d 225, 160 A.L.R.

1099, certiorari denied, 326 U.S. 733, 66 Sup. Ct. 41, 90 L. Ed. 436, rehearing denied, 326 U.S. 808, 66 Sup. Ct. 137, 90 L. Ed. 493; Ex parte Nix, 149 Tex. 267. 231 S.W. 2d 411, certiorari denied, 340 U.S. 840, 71 Sup. Ct. 28, 95 L. Ed. 616. Of course this court has jurisdiction to and will intervene by writ of habeas corpus to protect one who has been committed to jail for a constructive contempt without a hearing and without evidence being taken as a basis for the judgment for such a judgment is a denial of the constitutional right of due process. Ex Parte Renfro, 115 Texas 82, 273 S.W. 813, 40 A.L.R. 900; Ex Parte Ratliff, 117 Texas 325, 3 S.W. 2d 406, 57 A.L.R. 541; Ex Parte Pyle, 134 Texas 148, 133 S.W. 2d 565; Ex Parte Holden, 144 Texas 295, 190 S.W. 2d 485; Ex Parte Henry, 147 Texas 315, 215 S.W. 2d 588; Ex Parte Morris, 147 Texas 140, 215 S.W. 2d 598. But this is not such a case.

An examination of the record in the contempt proceeding reflects that relator was duly notified of the contempt hearing, that he was present in person and was represented by counsel at the hearing and that he testified in great detail therein. The jurisdiction of the court over the subject matter of the proceeding was unchallenged.

Not for the purpose of weighing the evidence on the issues raised here but solely for the purpose of demonstrating that the trial court did not enter the judgment of contempt without evidence before it as a basis for that judgment, it may be noted that on the issue of his inability to pay relator testified as follows: that sometime following his separation from his wife in November, 1945, he left their place of residence in California and came to Texas where for the first year he did not have steady employment; that he worked one year for an employer who paid him two dollars per hour; that for the three-year period preceding the contempt hearing he operated a welding rig under contract from which his gross earnings averaged $1200.00 per month and his net earnings averaged from $300.00 to $500.00 per month; that in 1948 he bought an airplane for which he paid $1000.00; that he bought a home for his mother and father for $4000.00, $3000.00 of which sum had been paid at the time of trial; that from the time he returned to Texas until his father's death in 1952 he had contributed from $50.00 to $70.00 per month to the support of his father and mother in addition to payments he made of $50.00 per month on the house, and during 1952 he paid out approximately $2200.00 in satisfaction of hospital, doctor and funeral bills for his father; that he was

also the sole support of an invalid brother for whom he had been paying drug bills of some $15.00 per month. On the issue of relator's present inability to pay up the arrearages, the record reflects that although the title stands in his mother's name, relator is the beneficial owner of a seventy-five per cent equity in a house for which he paid $4000.00 in 1947 or 1948; that he still owns the airplane which at the time of trial he estimated to be worth $300.00; that relator's present wife from whom, in the ordinary course of things, he might be expected to obtain help is a part owner of the Sunray Motor Company at Sunray. Moreover, there is no showing in the evidence that relator, to whom extensive credit has been extended in the past, has exhausted or even used his credit resources in an effort to obtain money to discharge his obligation.

It may be noted also that his testimony on the issue of want of notice of the support order was somewhat conflicting and confusing but included the following: that he was represented by counsel in the divorce action; that after his return to Texas "there was a *period of time*" when he did not know about the support order; that he had been to California to see the children every year since and including the year 1948; that his former wife and her second husband had told him that the court had made the support order and "as far as their word was concerned, yes, I knew it." In addition to the testimony of relator, the judgment of the California court containing the support order recited that relator was served with process and answered in the case and stipulated that the same might be tried as a default.

From the foregoing summary of the evidence on the issues being considered it should be obvious that this court cannot say that the trial court's express finding that relator had actual knowledge of the support order or its presumed finding that he was able to make the support payments substantially as they accrued and is now able to pay the arrearages is so completely without evidentiary support as to render that court's judgment void on the ground that it deprives relator of his liberty without due process of law.

There is in the motion to have relator held in contempt and in the trial court's judgment some indication that the proceeding below was founded on the provisions of Article 2328b-1 to 2328b-3, V.A.C.S., Acts 1951, 52nd Leg., p. 643, ch. 377. Those articles are a verbatim adoption of the Uniform Reciprocal Enforcement of Support Act suggested by The National Confer-

ence of Commissioners on Uniform State Laws. See page 43, et seq., 1952 Cumulative Annual Pocket Part, Vol. 9A, Uniform Laws Annotated. If that article were a necessary basis for the contempt proceeding it might well be, as relator contends, that the order here would be void because of the failure of the complainant below to prove that California had adopted a similar law with reciprocal remedies, for the article provides that its purpose is to "improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto," and in providing for the enforcement of support orders of other states it defines the word "State" as including "any state, territory or possession of the United States and the District of Columbia in which this or a substantially similar reciprocal law has been enacted." But in our view the contempt judgment here does not in fact rest on Article 2328b.

The principal remedies provided in Article 2328b for enforcement of a foreign support order are found in Sec. 15 of Part III of the article wherein it is provided that a court of this state has the power to compel compliance with *its orders* by (a) requiring the defendant to furnish a cash deposit or bond to assure payment of any amount required to be paid, (b) requiring the defendant to make periodic payments to the clerk, the probation department or the obligee, and (c) "to punish the defendant who shall violate any order of the court to the same extent as is provided by law for contempt of the court in any other suit or proceeding cognizable by the court." By Section 3 of Part I of the article it is provided that the remedies provided therein "are in addition to and not in substitution for any other remedies."

Before the adoption of Article 2328b it was held by this court that a defendant could be punished by the courts of this state for contempt for failing to comply with the provisions of a foreign support order. Guercia v. Guercia, Tex. Civ. App., 239 S.W. 2d 169, writ refused N.R.E., 150 Texas 418, 241 S.W. 2d 297. In conferring upon the courts of this state power to punish for contempt for failure to comply with their own orders Article 2328b did not purport to deny to our courts the power theretofore held and exercised to punish for contempt for failure to comply with the terms of the judgment of a sister state. As a matter of fact, Sec. 3, Part I, expressly preserved that power. The punishment assessed in the court below was for failure to comply with the terms of the California judgment and not for failure to comply with an order of the court below. There was

no necessity, therefore, for proving that California had a law similar to Article 2328b and the order was not void because of the failure to make such proof.

Relator's contention that the trial court had no authority to require him to pay a fee of $500.00 to the attorney representing his former wife in the contempt proceeding is founded on the theory that the only authority for the allowance of the fee is Rule 308A, Texas Rules of Civil Procedure, promulgated by this court, and that this court was without authority to promulgate such a rule, its authority in this respect being limited under the provisions of Article 1731a, V.A.C.S., Acts 1939, 46th Leg., p. 201, to the promulgation of rules of procedure which should "not abridge, enlarge or modify the substantive rights of any litigant." In the event he is held to be mistaken in the foregoing contention, relator asserts nevertheless that the order is void in so far as it requires him to remain imprisoned until the attorney's fee is paid. The imprisonment, he says, is an imprisonment for debt in violation of Article I, Section 18 of the Constitution of this state. We first notice this latter contention.

■ All of the cases to which our research has led us hold that a defendant's constitutional freedom from imprisonment for debt is not violated in a contempt proceeding to enforce support payments by a judgment which requires that he remain in jail until an attorney's fee allowed the complainant and all costs are paid. Eddens v. Eddens, 188 Va. 511, 50 S.E. 2d 397; Jensen v. Jensen, 119 Neb. 469, 229 N.W. 770; Ellery v. Superior Court, etc., 25 Cal. App. 2d 222, 77 P. 2d 280; State exrel Krueger v. Stone, 137 Fla. 498, 188 So. 575; Stinson v. Stinson, 311 Ky. 139, 223 S.W. 2d 727. The reasoning on which these decisions are based is well expressed in Eddens v. Eddens where, in commenting on like decisions which it followed, the court said: "These authorities reason that allowances for counsel fees and suit money are of the same nature and are governed by the same general principles as allowances for maintenance and support; that allowances for counsel fees and costs are incidental to and a part of the alimony decreed to be paid to the wife, in that they are a means of enforcing the performances of a legal duty owing by the husband to the wife, in which the public has an interest; and that such allowances, like alimony, are not mere debts or money judgments within the meaning of the constitutional and statutory provisions prohibiting imprisonment for debt." (188 Va. 511, 50 S.E. 2d 400.)

While we have found no Texas cases in which the question

was directly adjudicated it may be noted that this court sustained a judgment in the case of Ex Parte Davis, 101 Texas 607, 111 S.W. 394, 17 L.R.A. (N.S.) 1140 in which the defendant was remanded to jail until he had paid an attorney's fee as well as accrued installments of temporary alimony and child support. Relator's contention that he is imprisoned for debt is overruled.

For largely the same reasons we hold that this court did not exceed its statutory authority in providing in Rule 308A that a trial judge in a proceeding thereunder might allow the complainant a recovery of an attorney's fee which should be charged and collected as costs. The attorney's fee is but a part of the procedural remedy for enforcing substantive rights and the fee allowed as well as other costs in the proceeding is incidental to and a part of the payments necessary for the support of the minors. Nelson on Divorce and Annulment, Second Edition, Vol. 2, § 16.23, p. 320; Tribe v. Tribe, 59 Utah 112, 202 P. 213; Graham v. Graham, 140 Tenn. 328, 204 S.W. 987; Ebstein v. Saxen, 154 Misc. 331, 276 N.Y.S. 69.

It is ordered that relator be remanded to the sheriff of Moore County, to be by him confined under the order of the district court, and that relator pay all costs of this proceeding.

Opinion delivered June 17, 1953.

Rehearing overruled July 22, 1953.