**Ex parte John Otis BARNETT, Relator.**

**No. 20296.**

Court of Civil Appeals of Texas, Dallas.

Jan. 30, 1980.

Charles W. Yuill, Jr., Yuill & Pittenger, John Otis Barnett, Dallas, for appellant.

Michael Tibbals, Vetter, Bates, Tibbals & Lee, Dallas, for appellee.

Before GUITTARD, C. J., and ROBERTSON and HUMPHREYS, JJ.

GUITTARD, Chief Justice.

In this petition for writ of habeas corpus, relator attacks as void an order of one of the district courts of Collin County finding him in contempt and committing him to jail until he pays an arrearage of $5,250 in child support. He contends that the court had no jurisdiction to enforce the support order because it was rendered by a district court of Dallas County, but that court had transferred the proceeding to Collin County after some of the delinquent payments had fallen due. He attacks the order further on the ground that the motion for contempt fails to identify the support order and fails to allege clearly in what manner he had disobeyed it, and also on the ground that he is unable to pay the arrearage. We hold that the Collin County district court had jurisdiction of the motion for contempt under section 11.06 of the Texas Family Code (Vernon 1975), that the motion was sufficient to give relator notice of the contempt charged, and that relator has not conclusively established his involuntary inability to pay the arrearage. Consequently, we deny the writ and remand relator to the custody of the sheriff of Collin County.

### 1. Jurisdiction of Transferee Court

In support of the contention that the district court of Collin County had no jurisdiction, relator argues that under the decision of the Supreme Court of Texas in *Ex parte Gonzales,* 111 Tex. 399, 238 S.W. 635 (1922), one court has no jurisdiction to enforce by contempt the order of another court. He asserts that when a proceeding affecting the parent-child relationship is transferred to another county under section 11.06, the court which issued the support order retains jurisdiction to enforce that order by contempt until another order is issued by the court to which the proceeding has been transferred, and that the transferee court can enforce only its own orders issued after the transfer.

We conclude that this argument is contrary to the concept of continuing jurisdiction in the Family Code. Section 11.-05(a) provides that with exceptions not relevant here,

*when a court acquires jurisdiction* of a suit affecting the parent-child relationship, that court retains continuing jurisdiction of all matters provided for under this subtitle in connection with the child, and *no other court has jurisdiction* of a suit affecting the parent-child relationship with regard to that child *except on transfer as provided in Section 11.06 or 17.06 of this code.* [Emphasis added.]

Tex.Family Code Ann. § 11.05 (Vernon Supp.1979). Pertinent provisions of section 11.06 are as follows:

(c) For the convenience of the parties and witnesses and in the interest of justice, the court, on the timely motion of any party, may transfer the proceeding to a proper court in any other county in the state.

Tex.Family Code Ann. § 11.06(c) (Vernon 1975).

(g) The court transferring a proceeding shall send to the proper court in the county to which transfer is made the complete files in all matters affecting the child, certified copies of all entries in the minutes, and a certified copy of any decree of dissolution of marriage issued in a suit joined with the suit affecting the parent-child relationship. If the transferring court retains jurisdiction of another child who was the subject of the suit, the court shall send a copy of the complete files to the court to which the transfer is made and shall keep the original files.

Tex.Family Code Ann. § 11.06(g) (Vernon Supp.1979).

(h) A court to which a transfer is made becomes the court of continuing jurisdiction, and *all proceedings in the suit are continued as if it were brought there originally.* [Emphasis added.]

Tex.Family Code Ann. § 11.06(h) (Vernon 1975).

In enacting these provisions for exclusive continuing jurisdiction, the legislature has recognized "the need to commit the decision of all controversies that directly affect the welfare of particular children to a single

court." *Curtis v. Gibbs,* 511 S.W.2d 263, 266 (Tex.1974). In the light of this policy, we must consider what effect must be given to section 11.06(h), which provides that the transferee court "becomes the court of continuing jurisdiction, and all proceedings in the suit are continued as if it were brought there originally."

We conclude that when this provision is interpreted in the light of the other quoted provisions of the Code, it is clear that the transferee court acquired jurisdiction of the proceeding at the time of the transfer "as if it were brought there originally," and that no other court has jurisdiction. Otherwise, an opportunity would exist for a conflict between the two courts of the sort that the "continuing jurisdiction" provision of section 11.05 is designed to prevent. This intent may be gathered also from section 11(g), which contemplates that the transferring court will no longer retain any papers in the case, other than those entered in its own minutes, unless the court retains jurisdiction of another child that was the subject of the suit. It is unreasonable to suppose that the drafters of the Code intended that the transferring court retains jurisdiction to enforce its order after all the papers in the case, other than the orders entered in its minutes, have been sent to the transferee court. Neither is there any reason to require the transferee court to hold another hearing and issue another support order before it has jurisdiction to entertain a motion for contempt.

We do not consider this holding as contrary to that in *Ex parte Gonzales,* 111 Tex. 399, 238 S.W. 635 (1922). That case concerned violation of an injunction. The violation was a single act done before the case was transferred. Although a statute provided that upon transfer the transferee court should have jurisdiction of the case as though the suit had been originally brought in that court, that statute, when taken together with other statutes concerning contempt and injunctions, was held not to authorize the transferee court to punish a violation that occurred when the cause was still pending in the transferring court. Thus, the general statement in the opinion

that one court is not authorized to punish contempts of another court must be understood to be based on the particular statutes under consideration.

■ That there is no inherent or constitutional limitation on the power of a court to use its contempt power to enforce the orders of another court is demonstrated by *Ex parte Helms,* 152 Tex. 480, 259 S.W.2d 184 (1953), which upheld the power of a Texas court to enforce a foreign support order by contempt. It would be extraordinary to hold that a district court in Collin County has power to enforce by contempt a support order of a California court, but that the legislature has no power to authorize it to enforce the order of a district court of Dallas County after the proceeding has been transferred to Collin County under section 11.06 of the Code.

We recognize that our holding is contrary to the decision in *Ex parte Chandler,* 580 S.W.2d 12 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). In that case the court of civil appeals felt bound by *Gonzales* to hold that a court in Harris County had no power to enforce by contempt a support order from Dallas County for an arrearage that arose before the transfer to Harris County.

We decline to follow *Chandler* for the reasons already stated. We note that in a sequel to the first *Chandler* decision, the same court of civil appeals held that the Harris County district court had jurisdiction to render a money judgment for the arrearage under section 14.09(c) of the Code, and that this jurisdiction was not limited to support payments that came due after the transfer. *Chandler v. Mierendorf,* 590 S.W.2d 593, 595 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). It is contrary to the concept of exclusive continuing jurisdiction embodied in section 11.05(a) to hold that a court in Dallas County may punish by contempt a failure to make payments due before the transfer, but that a court in Harris County may concurrently levy an execution on the contemner's property for the same payments. In our opinion, the

plain language of sections 11.05 and 11.06(h) forbids such a result.

### 2. Sufficiency of Motion

Relator attacks the finding of contempt on the ground that respondent's motion for contempt fails to specify the book and page of the court's minutes in which the support order is found or otherwise give him adequate notice of the charge against him. He points out that the motion alleges that it is based on an order of May 4, 1978, but that no order of that date appears in the record. The motion quotes an order alleged to be of that date, but the record shows that it was signed by the judge on August 1, 1978. This order bears the signature of relator and of respondent's counsel, and orders relator to pay $400 per month as child support, beginning July 1, 1978. The record indicates that a hearing to increase the amount of support payments was held earlier and that the judge announced his order from the bench on May 4.

Relator does not suggest that there is any other order in the record that he may have confused with the order signed on August 1. We hold that he had adequate notice of the order. Under these circumstances the discrepancy in the dates is immaterial. *Ex parte Benitez,* 590 S.W.2d 704 (Tex.1979).

Relator also complains that the motion is insufficient in that it fails to allege the due date of any particular payment and fails to demonstrate how the amount of the arrearage was ascertained. The motion, after quoting the terms of the order alleged to have been disobeyed, alleges an arrearage in a certain sum. We hold that this allegation is sufficient notice of the charge. The statement of facts shows that relator took the stand and admitted that he was in arrears in the amount found by the court. Consequently, he will not be heard to say that he was not properly advised of the amount claimed.

### 3. Inability to Pay

The point that has given us the most concern is relator's contention that he has shown his inability to pay the amount of the arrearage and that respondent has failed to offer any countervailing proof. The record shows that relator is a lawyer and has a substantial income, although it has fallen off during the pendency of this litigation. He has a number of debts that he has not been able to pay. He owns a home and an automobile, both of which he bought shortly before the amount of his support payments were increased, but neither their value nor the amounts of the debts against them are shown. His present wife is qualified as a legal secretary, but is not employed. He has made substantial payments on other obligations, which he appears to regard as more pressing than his obligation to support his child. He has made no child support payments since January 1979. We hold that although relator has shown various circumstances indicating a poor financial situation, he has not conclusively established involuntary inability to pay the arrearage in child support. Consequently, we cannot hold the contempt order void.

The writ of habeas corpus is denied and relator is remanded to the custody of the sheriff of Collin County.