W.D.A. v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-125-CV

     W.D.A.,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the County Court
Bosque County, Texas
Trial Court # 90-06-054J
                                                                                                    

O P I N I O N
                                                                                                    

      W.D.A., a juvenile, appeals from a modification of a disposition order. He alleges violations
of due process and right to counsel under both federal and state law. He also alleges that the
county court's orders failed to include mandatory provisions from the Family Code. We will
reform and affirm the judgment.
      In July 1990, the juvenile court of Bosque County found that W.D.A. had engaged in
delinquent conduct and placed him on probation for one year. He was initially placed at Kids
Incorporated, a residential treatment facility. On December 7, he was moved to the Central Texas
Therapeutic Foster Home. He was discharged twenty days later and returned to his father's home
in Clifton. On January 25, 1991, the State filed a motion to modify the disposition order. The
court modified the order and committed the child to the custody of the Texas Youth Commission
(TYC).
      In points one through five, W.D.A. asserts various violations of his federal and state
constitutional rights to due process. He also asserts violations of his right to counsel and to a fair
trial under the provisions of the Family Code. His complaints center around a meeting of
community and mental health officials which occurred on January 25, 1991, in the county judge's
office. Present at this meeting were: the county judge, the chief of police, the county attorney,
the superintendent of the school system, the high school principal, juvenile probation officers, and
the regional director for the Heart of Texas Mental Health and Mental Retardation Center (MH-MR). Neither W.D.A., his family, nor his attorney were present at this meeting. The State filed
its motion to modify the child's disposition the same afternoon.
      Participants testified about the meeting at the modification hearing, at which the county judge
presided. Each testified that they discussed the problem of what to do with the child. The juvenile
probation officer testified that the child's past misconduct was discussed, as were possibilities of
where he might be placed. The MH-MR director testified that his personal impression was that
the consensus among the participants was to remove the child from the county. The high school
principal stated that the school did not have a program that would best serve the child. Clifton's
police chief expressed his opinion in the meeting that the child, because of his criminal activity,
was potentially dangerous to himself and the community and should be placed in an institution that
could manage his problems. He testified that since W.D.A. had been placed on probation the
Clifton police department had had forty-five to fifty contacts with the child.
      W.D.A. asserts that this "Star Chamber" meeting denied him due process and a fair trial
because, at the conclusion of the modification hearing, the judge committed him to the Texas
Youth Commission—just as the State requested in its petition and as the group had discussed in
its meeting.
      The county court is the designated juvenile court in Bosque County. Where a county court
is designated as a juvenile court, at least one other court shall also be designated as the juvenile
court. Tex. Fam. Code Ann. § 51.04(c) (Vernon Supp. 1992). Also, when the judge of the
designated court is not a licensed attorney, an alternate court must be designated. Id. § 51.04(d)
(Vernon 1986). The county judge who presided over W.D.A.'s modification hearing is a non-lawyer judge who had taken office less than two months before. He had not presided over the
original disposition hearing in June 1990. The district court of Bosque County, the alternate court
designated under the Family Code, could have heard the motion to modify. Id. In fact, the county
judge suggested to the parties that the case be referred to the district court, but his suggestion was
not acted upon by either party.
      At the conclusion of the hearing, the judge stated that, although there might have been a
"questionable gathering of the forces," his only purpose in holding the meeting was to find an
alternative to sending the child to the TYC. The court then announced that W.D.A. had violated
the terms of his probation, but recessed the hearing for ten days to give the juvenile probation
officers and the child's counsel time to find an alternative placement. No statement of facts from
the continued hearing is before us. Because the child was eventually committed to the TYC, we
assume that no alternative placement could be found.
      W.D.A.'s counsel and the State agree that the child's experience in the system has been less
than perfect. The residential facility where he was first placed closed due to violations of state
regulations. The second facility was under investigation when the child entered, and it was
appealing the revocation of its license at the time of trial. The child's father testified that W.D.A.
had been home since January 1991, that it was very difficult to control him, and that it was not
in the child's best interest to remain in his home.
      We note that the full array of constitutional due-process rights applies only to an adjudication
hearing. In the Matter of J.T.H., 779 S.W.2d 954, 957 (Tex. App.—Austin, no writ). Due
process is satisfied in a disposition hearing when the juvenile is represented by counsel, has full
opportunity to cross-examine and present witnesses, and is fully aware of the nature of the
proceedings. Id.
      The representatives of the community organizations were free to convene and discuss the
welfare of a child under their care. Several of the participants, including the juvenile probation
officer and MH-MR director, testified that the TYC was not appropriate for W.D.A.—yet none
could give a viable alternative. Even with the ten-day recess, no alternative placement was found. 
It appears from the record that every effort was made by the presiding judge to avoid committing
the child to the TYC. We do not find that W.D.A. was denied due process or a fair trial. See id. 
We overrule points one through five.
      In points six and seven, W.D.A. asserts that the original order placing him on probation and
the order modifying the disposition lacked two mandatory determinations required by the Family
Code. Section 54.04(i) of the Family Code states that when a court places a child on probation
outside the home, or commits a child to the TYC, it shall include in its order its determination that
(1) it is in the child's best interests to be placed outside the home, and (2) reasonable efforts were
made to prevent the need for the child's removal. Tex. Fam. Code Ann. § 54.04(i) (Vernon
Supp. 1992). The Austin Court of Appeals has held this provision to be mandatory, requiring
remand for sufficient determinations. Matter of J.T.H., 779 S.W.2d at 960.
      The original order placing the child on probation, signed July 17, 1990, by a former judge,
did not contain the findings required by section 54.04(i). On that same day, the child and his
attorney signed "Defendant's Waiver of Appeal." A child may waive any right granted by
constitution or law. Tex. Fam. Code Ann. § 51.09(a) (Vernon 1986). W.D.A. made a written,
informed, and voluntary waiver of his right to appeal the court's original order. See id. He
cannot now complain about that order. 
      In its order modifying the disposition, the court found that W.D.A. violated a "reasonable and
lawful order of the court," as required under section 54.05 of the Code. See id. § 54.05(f)
(Vernon Supp. 1992). Although the original order failed to include the mandatory determinations,
it was not void. To the extent that the original order set forth the terms and conditions of
probation, the court could find that W.D.A. violated a "reasonable and lawful order of the court." 
 Further, whereas section 54.04 governs disposition hearings and requires the mandatory
determinations, section 54.05 governs modifications and does not require similar determinations. 
Id. §§ 54.04(i), 54.05. Thus, the court did not err in failing to include the determinations in the
order modifying the disposition. We overrule points six and seven.     
      In his eighth point, W.D.A. asserts that the court erred in committing him to the TYC until
the age of eighteen. The court committed W.D.A. to the TYC "for an indeterminate period not
to exceed [his] Eighteenth (18th) birthday." The Family Code provides that "the court may
commit the child to the Texas Youth Commission without a determinate sentence." Id. §
54.04(d)(2). The TYC may not discharge the child before his eighteenth birthday without
approval of the juvenile court, but it must discharge him on his twenty-first birthday. Tex. Hum.
Res. Code Ann. § 61.084(a), (d) (Vernon Supp. 1992). Once a court commits a child to the
TYC, the Commission has broad discretion in dealing with the child—including when to discharge
him. In the Matter of A.N.M., 542 S.W.2d 916, 921 (Tex. Civ. App.—Dallas 1976, no writ). 
We sustain point eight.
      In his final point, W.D.A. asserts that the court erred in finding he had violated a reasonable
and lawful order of the court while at the second residential treatment center because the order
transferring him to that facility was not effective until after the alleged incidents occurred. 
      The child was initially placed at Kids., Inc., a residential treatment facility, in July 1990. On
December 7, he was transferred to Central Texas Therapeutic Foster Home. He was discharged
from that facility on December 27 and returned to his father's home in Clifton. On January 8,
1991, the court signed "Amended Conditions of Probation at Placement Facility" that changed the
child's residence to Central Texas Therapeutic. The State filed its motion to modify the
disposition on January 25, alleging the child had violated the conditions of his probation while at
Kids, Inc. In the order modifying disposition, the court found that W.D.A. had violated the
conditions of his probation by skipping school and by running away from both facilities. It further
found that, while at Kids, Inc., W.D.A. had knowingly and intentionally threatened a teacher with
bodily harm.
      A juvenile court may commit a child to the TYC after a modification hearing if it finds beyond
a reasonable doubt that the child violated a reasonable and lawful order of the court. Tex. Fam.
Code Ann. § 54.05(f). The court found beyond a reasonable doubt that W.D.A. violated the
terms of his probation at Kids, Inc. and he does not complain of the court's finding. Any findings
of violations at Central Texas Therapeutic are surplusage and did not cause rendition of an
improper judgment. See Tex. R. App. P. 81(b)(1). We overrule point nine.
      Having sustained point eight, we reform the judgment to delete that portion stating "not to
exceed [his] Eighteenth (18th) birthday" and affirm the judgment as reformed.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reformed and affirmed
Opinion delivered and filed July 8, 1992
Do not publish



th="16" height="14" border="0">

 154.069(a) expressly prohibits a
court from including “any portion of the net resources of [an obligor’s] spouse” in calculating
the amount of child support to be ordered. Id. § 154.069(a) (Vernon 2002) (emphasis added).
      Section 154.069 is a legislative endeavor “to design a neutral scheme that would be
unaffected by the remarriage of the child support obligor, either for the purpose of increasing
or decreasing child support.” Starck v. Nelson, 878 S.W.2d 302, 306 (Tex. App.—Corpus
Christi 1994, no writ) (quoted with approval by In re Knott, 118 S.W.3d 899, 905 (Tex.
App.—Texarkana 2003, no pet.)). Thus, the Texarkana Court of Appeals has concluded that,
even though income generated by a spouse’s separate property is community property, no
portion of that income should be included in calculating a child support obligor’s net resources. 
Knott, 118 S.W.3d at 904. For the reasons which follow, we conclude that the same rule
applies to income generated by community property subject to the sole management and
control of the non-obligor spouse.
      In determining what are the net resources of the non-obligor spouse, only one type of
resource plainly must be excluded under section 154.069, the non-obligor spouse’s earned
income (i.e., “100 percent of all wage and salary income and other compensation for personal
services”), even though this is community property. See Tex. Fam. Code Ann. §
154.062(b)(1) (Vernon 2002), § 154.069(a). Notably, a spouse’s earnings are classified under
marital property law as community property subject to the sole management and control of that
spouse. Id. § 3.102(a)(1) (Vernon 1998). As such, the non-obligor spouse’s earnings are not
subject to any nontortious liabilities the obligor incurs during the marriage.


 Id. § 3.202(b)(2).
      Because of constitutional and statutory amendments, the line between community property
and separate property has been blurred. Under article XVI, section 15 of the Texas
Constitution, spouses can by written agreement convert community property to separate
property or vice versa. Tex. Const. art. XVI, § 15. The statutes governing the management
of marital property provide a clear legal guideline for differentiating between income-producing property which should be considered for child support purposes as among the assets
of an obligor spouse and that which should be considered as among the assets of the non-obligor spouse. Following this approach yields the same result reached in Knotts. See Tex.
Fam. Code Ann. § 3.102(a)(2) (Vernon 1998) (income from separate property is community
property subject to the sole management and control of the spouse who owns the separate
property).
      This approach is also consistent with the undisputed manner in which the interest income
reported on the Vannattas’ tax returns should be considered. Id. § 3.102(b) (Vernon 1998)
(community property subject to sole management and control of one spouse intermingled with
community property subject to sole management and control of the other spouse is subject to
their joint management and control). Thus, because the interest income is subject to the joint
management and control of the Vannattas, fifty percent is included within Vannatta’s net
resources.
      In addition, this approach is consistent with section 3.202(b)(2), which provides rules for
marital property liability. Id. § 3.202(b)(2). The Supreme Court has characterized child
support as a “liability” of the obligor. In re A.D., 73 S.W.3d 244, 248 (Tex. 2002). 
Community property which is subject to the sole management and control of one spouse is not
subject to the liabilities of the other spouse. Tex. Fam. Code Ann. § 3.202(b)(2).
      A danger of this approach is that it gives rise to the possibility of fraudulent conduct on
the part of an obligor spouse in an effort to avoid the duty of support. However, the Family
Code provides mechanisms to combat such conduct. Section 154.066 permits a court to base a
child support award on the earning potential of an obligor if the court determines that the
obligor is intentionally unemployed or underemployed. Id. § 154.066 (Vernon 2002). Section
154.067 permits a court to “assign a reasonable amount of deemed income to income-producing assets that a party has voluntarily transferred.” Id. § 154.067(b) (Vernon 2002).
      Finally, a court may vary from the child support guidelines “if the evidence rebuts the
presumption that application of the guidelines is in the best interest of the child and justifies a
variance from the guidelines.” Id. § 154.123(a) (Vernon 2002). In determining whether to
vary from the guidelines, the court may consider:
      •    “any financial resources available for the support of the child;”
 
      •     “whether the obligor . . . has an automobile, housing, or other benefits furnished by .
. . another person . . .;” and
 
      •    “any other reason consistent with the best interest of the child, taking into
consideration the circumstances of the parents.”
 
Id. § 154.123(b)(3), (10), (17) (Vernon 2002).
      It must be noted that the Corpus Christi Court of Appeals has determined that a court
should not consider the resources of a non-obligor spouse as a basis to vary from the support
guidelines under section 154.123. See Starck, 878 S.W.2d at 306 (“Permitting the court to
deviate from child support guidelines because the obligor’s new spouse contributes to their
joint living expenses allows the court to do indirectly what the statute directly prohibits.”). 
We agree that the resources of a non-obligor spouse should not be the sole basis to vary from
the guidelines. However, if the obligee presents evidence that the obligor has intentionally or
voluntarily reduced his earnings or earning potential, then the best interest of the child may
dictate that the resources of a non-obligor spouse should be considered in deciding whether to
vary from the guidelines. See Tex. Fam. Code Ann. § 154.123(a).
      Consistent with Knott, we hold that no portion of the income generated by community
property subject to the sole management and control of the spouse of a child support obligor
should be included in calculating the obligor’s net resources, absent evidence which would
justify a variance from the child support guidelines. The assets in question are community
property subject to Cindy’s sole management and control. Thus, the court should not have
included any portion of the income generated by these assets in calculating Vannatta’s net
resources. See Tex. Fam. Code Ann. § 154.069(a); cf. Knott, 118 S.W.3d at 904.
      Accordingly, the court abused its discretion by including income generated by community
property subject to Cindy’s sole management and control and by including more than one-half
of the interest income reported on the Vannattas’ tax return in its calculation of Vannatta’s net
resources. As noted, this miscalculation appears to result in a difference of $35 per month in
the child support obligation. Although this figure seems inconsequential on its face, when it is
multiplied over the term of the obligation (here assuming until J.C.K.’s 18th birthday), the
total variance is $315.


 Therefore, the court’s error in this regard probably caused the
rendition of an improper prospective child support award. See Tex. R. App. P. 44.1(a)(1); In
re Marriage of Thurmond, 888 S.W.2d 269, 276 (Tex. App.—Amarillo 1994, writ denied). 
Vannatta’s first, second, and fourth issues are sustained.
RETROACTIVE CHILD SUPPORT
Net Monthly Resources
      Vannatta contends in his fifth issue that the court abused its discretion by ordering him to
pay $41,770 in retroactive child support because the record contains no evidence or factually
insufficient evidence to support Findings of Fact Nos. 19, 28, 29, 30, and 31. He contends in
his sixth issue that the record contains no evidence or factually insufficient evidence to support
a variance from the child support guidelines. He contends in his seventh issue that the court
abused its discretion by including a portion of Cindy’s net resources in calculating his own net
resources. He contends in his eighth issue that the court abused its discretion by failing to
deduct net operating expenses and mortgage payments in calculating his net rental income.
      The contested findings of fact state the court’s findings with regard to Vannatta’s net
monthly resources in certain years between J.C.K.’s birth and the filing of this suit. 
Specifically, Vannatta challenges the court’s findings on his net monthly resources in 1985 and
from 1994 through 1997.
      Vannatta did not produce a 1985 tax return or other documentary evidence of his income
for that year. He testified that he worked for the same company from January 1985 to October
1993. During that period, his gross weekly income fluctuated between $425 and $600. The
court based its finding of Vannatta’s net monthly resources for 1985 by taking the average of
these two figures ($512.50) as his gross weekly income.
      Vannatta counters that a review of the court’s findings regarding his income between 1985
and 1993 reflects a gradual increase in income during this eight-year period and the court’s
finding with respect to his 1985 income does not fit within this pattern. Thus, he contends that
the court should have considered his gross weekly income for 1985 to be closer to the $425
figure than in the middle. Accepting Vannatta’s calculations would lower his 1985 net
monthly resources by approximately $278.



      True, Vannatta’s argument that the gradual progression of his income growth as otherwise
reflected in the court’s findings makes the lower calculation seem logically correct. However,
Vannatta’s counsel did not take the opportunity to clarify this after Kolacek’s counsel
concluded his questioning of Vannatta. Therefore, the only evidence before the court was
Vannatta’s testimony that he made between $425 and $600 per week between 1985 and 1993.
      Courts have approved the use of averaging to determine an obligor’s net resources when
the record contains imprecise information regarding income. See e.g. Norris, 56 S.W.3d at
341-42; Mai v. Mai, 853 S.W.2d 615, 618-19 (Tex. App.—Houston [1st Dist.] 1993, no writ). 
Accordingly, we cannot say that the court acted without reference to guiding rules and
principles by determining Vannatta’s net resources for 1985 in this manner. See City of San
Benito, 109 S.W.3d at 757. Moreover, Vannatta’s testimony regarding his wages constitutes
some evidence and factually sufficient evidence to support Finding of Fact No. 19 regarding
Vannatta’s net resources in 1985.
      Vannatta’s tax returns for 1994 through 1997 provide some evidence and factually
sufficient evidence to support Findings of Fact Nos. 28 through 31. Vannatta’s fifth issue is
overruled.
      A review of Vannatta’s tax returns and the court’s findings with respect to Vannatta’s net
monthly resources from 1994 through 1997 indicates that the court’s calculations do not
include community property subject to Cindy’s sole management and control. In addition, the
court properly accounted for the net operating expenses (including mortgage payments)
Vannatta incurred in his own operation of a rent house and Vannatta’s losses from a coin
business he operated in 1995 and 1996.


 Vannatta’s seventh and eighth issues are overruled.
      Vannatta’s contention in his sixth issue, that the court improperly varied from the child
support guidelines, depends on affirmative findings on his fifth, seventh, and/or eighth issues. 
Because we have found against him on these issues, we overrule his sixth issue.
Mitigating Factors
      Vannatta contends in his ninth through eleventh issues that the court abused its discretion
by awarding $41,770 in retroactive child support without giving proper consideration to
mitigating factors including: the cost of his other sons’ post-secondary education, the debt
service that would be imposed on him as a result of the child support order, the statutory
considerations provided by section 154.131(b), Kolacek’s thirteen-year delay in telling him of
J.C.K.’s birth, the lack of a meaningful relationship between Vannatta and J.C.K. due to this
passage of time, and the undue financial hardship that would be imposed on Vannatta and his
family as a result of the child support order.
      Vannatta focuses primarily on Kolacek’s delay in telling him of J.C.K.’s birth. However,
Kolacek did retain an attorney who notified Vannatta before J.C.K.’s birth that Kolacek was
pregnant with his child. In response, Vannatta consulted with an attorney to determine his
rights and responsibilities. Vannatta’s attorney mailed a letter to Kolacek’s attorney requesting
that Vannatta be notified when the child was born and advising that Vannatta would agree to
blood testing to determine paternity. Other than a sighting in a bar on one occasion, the
parties had no further contact with each other until Kolacek had the Attorney General institute
this proceeding.
      The version of section 154.131(b) applicable to this case requires a court to consider
whether:
(1) the mother of the child had made any previous attempts to notify the biological
father of his paternity or probable paternity;

      (2) the biological father had knowledge of his paternity or probable paternity;
 
(3) the order of retroactive child support will impose an undue financial hardship on
the obligor or the obligor's family; and
 
(4) the obligor has provided actual support or other necessaries before the filing of the
action.

Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 154.131(b), 1995 Tex. Gen. Laws
113, 164 (amended 2001) (current version at Tex. Fam. Code Ann. § 154.131(b) (Vernon
2002)).
      The main thrust of Vannatta’s closing argument to the trial court was that any retroactive
child support should be limited because Kolacek failed to notify him of J.C.K.’s birth for
thirteen years. The court stated in its Additional Finding of Fact No. 9 that it took into
consideration the financial hardship on Vannatta when it ordered retroactive child support.
      Vannatta presented no evidence regarding his sons’s anticipated post-secondary education
expenses. He did not make the “debt service” argument before the trial court which he
contends in his ninth issue the court should have considered as a mitigating factor.
      The only basis on which Vannatta concludes that the trial court failed to consider the
mitigating factors he presented is the fact that the court chose to award the full amount of
retroactive child support authorized by the statutory guidelines. However, the court’s decision
to award the full amount of retroactive support could also be construed as a decision that the
mitigating factors presented by Vannatta did not warrant a reduction in the amount of
retroactive support.
      Section 154.131 vests a trial court with discretion to determine whether to award
retroactive child support and the amount of that support. See In re Valadez, 980 S.W.2d 910,
913 (Tex. App.—Corpus Christi 1998, pet. denied); In re S.E.W., 960 S.W.2d 954, 956 (Tex.
App.—Texarkana 1998, no pet.). Because Kolacek told Vannatta of his probable paternity
before J.C.K.’s birth, the trial court could have determined that Kolacek was not solely
responsible for the delay in litigating Vannatta’s paternity. Accordingly, we cannot say that
the trial court abused its discretion when it ordered Vannatta to pay the retroactive child
support awarded. Vannatta’s ninth through eleventh issues are overruled.
INTEREST
      Vannatta contends in his twelfth issue that the court abused its discretion by requiring him
to pay the statutory rate of interest (12 percent per annum) for the retroactive child support
awarded. However, Vannatta acknowledges that the statute applicable to this case provided for
interest to accrue at that rate. See Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 53, 1995
Tex. Gen. Laws 3888, 3907 (amended 2001) (current version at Tex. Fam. Code Ann. §
157.265(c) (Vernon 2002)). Vannatta cites only the 2001 amendment to section 157.265(c)
(reducing the applicable rate to 6 percent) as support for his contention.
      Vannatta argues that the court could have somehow ordered him to pay retroactive child
support without reducing the retroactive support award to judgment. However, he fails to
explain how the court could have rendered an enforceable order for retroactive child support
without reducing that order to judgment.
      The court would have abused its discretion if it had failed to correctly apply the applicable
law in this case. See Kuntz, 124 S.W.3d at 181; Stevens, 84 S.W.3d at 722; D.S., 76 S.W.3d
at 516. Vannatta’s twelfth issue is overruled.
HEALTH CARE EXPENSES
      Vannatta contends in his thirteenth through fifteenth issues respectively that the court
abused its discretion by ordering him to reimburse Kolacek for prenatal and postnatal health
care expenses because: (1) Kolacek failed to lay a proper predicate for the admission of
testimony she offered in support of the claim; (2) the record contains no evidence or factually
insufficient evidence to support the amount of health care expenses for which reimbursement
was ordered; and (3) it was inequitable for the court to require Vannatta to pay for health care
expenses because he had a policy of health insurance in place which would have covered these
expenses had Kolacek timely notified him of J.C.K.’s birth.
      Kolacek offered in evidence properly authenticated business records to prove a portion of
the health care expenses. For the remainder of the expenses, she provided testimony, relying
to some degree on written summaries prepared by her attorney. Kolacek testified that she
brought receipts, cancelled checks, and other documents detailing these expenses to the
attorney who compiled the expenditures in two lists. The first of these lists, admitted as
Defendant’s Exhibit 6, details $12,985 in health care expenses. $7,113 of these expenses are
documented by other exhibits admitted in evidence. Kolacek provided testimony to
substantiate the other $5,872 referenced in this list. Vannatta’s counsel repeatedly objected to
Kolacek’s testimony on the basis that her testimony is not the best evidence of these expenses
and that documentary evidence should be offered to prove the expenses.
      Kolacek also testified about the average monthly expenses she incurred in caring for
J.C.K. She referred to a document, later admitted in evidence as Petitioner’s Exhibit P-43, 
prepared by her attorney as she testified. Vannatta’s counsel again objected that Kolacek’s
testimony is not the best evidence of these expenses and that supporting documents should be
offered to prove the expenses. The court overruled the objection and granted Vannatta a
running objection. Kolacek testified about her average monthly expenses from J.C.K.’s birth
through the date of the hearing. At the conclusion of Kolacek’s testimony, the court admitted,
over Vannatta’s objection, Petitioner’s Exhibit P-43.
      Kolacek’s testimony (supported by the exhibit) claims average monthly expenses from
1984 to 1989 of $89 for medical care and $20 for medications. From 1990 to 1995, she claims
average monthly expenses of $20 for medical care and $10 for medications. From 1996 to
1998, she claims average monthly expenses of $72 for medical care and $10 for medications.



      Vannatta characterizes Kolacek’s testimony as the equivalent of a summary of the contents
of voluminous writings as contemplated by Rule of Evidence 1006. See Tex. R. Evid. 1006. 
Thus, he contends that, consistent with Rule 1006, the voluminous writings themselves (i.e.,
Kolacek’s receipts, etc.) should have been made available to him for inspection. Kolacek
counters that she testified from personal knowledge and characterizes the documents as
writings used to refresh her memory under Rule of Evidence 612.


 Id. 612.
      A witness with personal knowledge may testify to expenses incurred without providing
documentation to substantiate the testimony. See Cockrell v. Republic Mortg. Ins. Co., 817
S.W.2d 106, 112 (Tex. App.—Dallas 1991, no writ); Jackman v. Jackman, 533 S.W.2d 361,
362 (Tex. Civ. App.—San Antonio 1975, no writ); 2 Steven Goode et al., Guide to the
Texas Rules of Evid § 1002.1 (3d ed. 2002). Kolacek stated on several occasions that she
was testifying from personal knowledge with regard to the health care expenses. Kolacek’s
counsel made copies of the summaries available to Vannatta’s counsel during trial. See Tex.
R. Evid. 612. Thus, we conclude that the court did not abuse its discretion by permitting
Kolacek to testify about her health care expenses or by permitting her to refer to the summaries
during her testimony. Vannatta’s thirteenth issue is overruled.
      Kolacek’s testimony provides some evidence and factually sufficient evidence to support
the court’s award of prenatal and postnatal health care expenses. Accordingly, Vannatta’s
fourteenth issue is overruled.
      Even though Kolacek did not notify Vannatta that she had given birth, the fact that
Vannatta knew she was pregnant and that he may be the father of the child is some evidence
from which the court may have concluded that Vannatta bears some responsibility for the delay
in the initiation of parentage proceedings. Therefore, we cannot say that the court abused its
discretion by ordering Vannatta to pay a portion of Kolacek’s prenatal and postnatal health care
expenses. Vannatta’s fifteenth issue is overruled.
ATTORNEY’S FEES
      Vannatta contends in his sixteenth and seventeenth issues respectively that the court abused
its discretion by characterizing the trial attorney’s fees awarded as child support because this is
not a proceeding to recover delinquent child support and because the characterization would
subject him to a constitutionally-prohibited imprisonment for debt if he failed to pay as
ordered.
      The portion of the court’s order at issue states as follows:
The court finds that Respondent, THOMAS JAKE VANNATTA, should be
ordered to pay a portion of KERRIE KOLACEK’S attorney’s fees in the sum of Five
Thousand and no/100ths Dollars ($5,000.00) and GRANTS JUDGMENT against
Respondent in favor of STEPHEN N. SMITH in that amount, with interest at the rate
of ten percent (10%) per annum. IT IS ORDERED that the attorney’s fees, which
were incurred in relation to the child and are in the nature of child support, are taxed
as costs, and Respondent, THOMAS JAKE VANNATTA, is ORDERED to pay said
judgment by paying STEPHEN N. SMITH . . . by cash, cashier’s check, or money
order the sum of $50 per month, beginning June 15, 2001, payable on or before that
date and on or before the same day of each month thereafter until the judgment is paid
in full.

      A court may order the payment of attorney’s fees as costs in any suit affecting the parent-child relationship. See Act of Apr. 11, 1997, 75th Leg., R.S., ch. 15, § 2, 1997 Tex. Gen.
Laws 55, 55 (amended 2003) (current version at Tex. Fam. Code Ann. § 106.002(a) (Vernon
Supp. 2004)); Goheen v. Koester, 794 S.W.2d 830, 836 (Tex. App.—Dallas 1990, writ
denied).
      Generally an attorney’s fee award cannot be enforced by contempt because of the
constitutional prohibition against imprisonment for debt. See Tex. Const. art. I, § 18;
Wallace v. Briggs, 162 Tex. 485, 488-89, 348 S.W.2d 523, 525-26 (1961); In re Moers, 104
S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). However, attorney’s fees
awarded in a proceeding to enforce a child support order can be enforced by contempt. See Ex
parte Helms, 152 Tex. 480, 486, 259 S.W.2d 184, 188 (1953); Moers, 104 S.W.3d at 611.
      This is not a proceeding to enforce a child support order. Thus, the trial court should not
have characterized the attorney’s fee award as being “in the nature of child support.” 
Accordingly, we will modify that portion of the judgment by deleting the phrase, “which were
incurred in relation to the child and are in the nature of child support.” Vannatta’s sixteenth
issue is sustained. We do not reach his seventeenth issue.
CONCLUSION
      We affirm those portions of the judgment awarding retroactive child support and
reimbursement for prenatal and postnatal health care expenses. We modify that portion of the
judgment awarding trial attorney’s fees by deleting the phrase, “which were incurred in
relation to the child and are in the nature of child support,” and affirm that portion of the
judgment as modified.
      We reverse that portion of the judgment awarding prospective child support and remand
this cause to the trial court for further proceedings consistent with this opinion.
 
FELIPE REYNA
                                                                   Justice
Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



      (Chief Justice Gray concurring in part and dissenting in part)
Affirmed in part,
reversed and remanded in part
Opinion delivered and filed May 12, 2004
[CV06]