In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-142 CV


____________________



IN RE STACEY ALLISON







Original Proceeding






MEMORANDUM OPINION



 In this proceeding, (1) relator Stacey Allison seeks relief from the trial court's order
finding her in contempt. The trial court's order sentenced Allison to confinement in the
county jail of Hardin County, Texas, for a period of six months, but suspended her
confinement subject to certain conditions. We grant the writ of habeas corpus.

Factual Background


 Allison and Pomonis, the parents of three minor children, divorced in 1992. The
trial court's order regarding possession of the children provided as follows:

 IT IS ORDERED that the conservators shall have possession of the
children at times mutually agreed to in advance by the parties and, in the
absence of mutual agreement, as follows:


 . . . .

 

 . . . NICK SPERO POMONIS shall have the right to possession of
the child as follows:


 . . . . 


 4. Christmas Holidays in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed
from school for the Christmas school vacation and ending at 3:00 p.m. on
December 25. 


Pomonis filed a motion for enforcement, in which he asserted Allison failed to allow him
possession of the children during Christmas school vacation in 2004 and sought to have
Allison held in contempt. Pomonis also sought to recover $1,510.84 for the children's
airline tickets.

 At the hearing on his motion for enforcement, Pomonis testified that he was
supposed to pick up the children at 6:00 p.m. on Friday, but he had called Allison to ask
if he could pick them up earlier. According to Pomonis, his son was graduating from
chiropractor school in Houston the following morning, so Pomonis needed enough time
to pick up the children and attend his son's graduation dinner party in Houston. Pomonis
planned to spend the night with the children in LaPorte, attend his son's graduation the
next morning, and then fly to Key West for vacation with the children Sunday morning.
However, Pomonis, a physician, became busy with patients in the hospital, and the
physician covering for Pomonis was not scheduled to begin work until 6:00 p.m. Pomonis
realized he could not finish seeing his patients and still arrive at Allison's home by six
o'clock, so he decided to pick up his child (N.P.) with another ex-wife (Rene) in Beaumont
before picking up his children with Allison in Sour Lake.

 Pomonis called Allison and explained the situation to her, and Allison offered to
drive to Beaumont to pick up N.P. According to Pomonis, Allison said she would have
all of Pomonis's children waiting for him at her home in Sour Lake. Pomonis testified he
told Allison that Rene had been threatening not to allow him to have N.P. for Christmas
vacation, and Allison assured him she would pick up N.P. Pomonis then called Rene and
told her that Allison would be picking up N.P., and Rene refused to allow anyone but
Pomonis pick up N.P. Pomonis testified he told Rene, "I'm not going to argue with this. 
Stacey will be there in a few minutes to pick her up[,]" and then he hung up the phone and
went to finish his work at the hospital. Pomonis admitted he was at the hospital at 6:00
p.m. According to Pomonis, Allison had agreed to allow him to pick the children up
early, and she also agreed to let him pick them up when he finished working. Pomonis
testified that he finished caring for his patients at approximately 7:30 or 7:35 p.m., and
he called Stacey to tell her he would arrive to pick up the children in thirty-five to forty
minutes. Pomonis testified that Stacey told him she did not have N.P. because Rene would
not allow her to take N.P. Pomonis then called Rene, who refused to allow Pomonis to
pick up N.P. because it was after 6:00 p.m. According to Pomonis, he told Rene, "You
cannot do this to me . . . . I pulled six extra calls during the fall to pay for this trip[.]" 
Pomonis later arrived at Rene's house, and he called the police upon finding that she was
not there.

 According to Pomonis, when he left Rene's home, he called Allison, who told him
she was not going to allow him to have the children. Pomonis testified that

 [Allison's] exact words were, "I'm afraid that you are so angry at Rene right
now for what she just did to you that you are going to take it out on the kids
and scream at them the entire way, all the way to Houston. And I don't
want them . . . you to do that to them. So, I'm not going to let the kids go
with you." 


Pomonis told Allison he was not upset because he had expected Rene not to allow N.P. to
go on vacation. Pomonis estimated that he arrived at Allison's house at approximately
9:00 p.m., and he knocked and rang the doorbell for eight to ten minutes. Pomonis called
Allison while his car was parked in her driveway, but he testified that she continued to
refuse to let him have the children. Pomonis testified that Allison offered to drive the
children to Houston the next morning.

 Pomonis told Allison he believed the real issue was that his children wanted to
attend a party on Friday night instead of going with him. Pomonis testified that the
children had called him two or three times the previous night and begged him to allow
them to attend the party. Pomonis refused because he wanted the children to attend their
brother's graduation party, and he did not trust Allison to get them there on time. 
According to Pomonis, he told his children on the night in question, "if I get there in your
driveway and you and your mom is [sic] not there, this is a whole scam in order to go to
your high school party[.]" Pomonis also testified that he told the children, "I don't care
whether you show up at my son's graduation or not. If you show up at my son's
graduation the next morning, you're not going to go on this trip." However, Pomonis
later testified that he would have allowed the children to go on vacation if they had come
to the graduation Saturday morning. When asked why he decided to punish the children
by not allowing them to go on the trip, Pomonis stated, "they are old enough to look at
their mother and tell their mother, 'Mom, this is not right, you doing this to Dad. You get
us to the house. . . . They are also big enough to know that they can't go to some high
school party and not go with their dad."

 According to Pomonis, fifty minutes before the graduation was scheduled to begin
in Houston, Allison called from Sour Lake to get directions for the graduation. Pomonis
also testified that after the graduation ceremony, he and his son were leaving to attend the
post-graduation party when Allison called from Houston and said she was lost. The next
day, Pomonis and his son flew to Key West. Pomonis did not have possession of his
children with Allison at all during the Christmas holidays.

 Pomonis stated he had rented a large condo, purchased nonrefundable airline tickets,
and rented a car for the planned trip to Key West. Pomonis testified, "Every vacation I
try to take these kids on, my ex-wives get together and they either try to destroy it before
I get there or once I get back from vacation." Pomonis testified he blamed both Allison
and Rene for what happened, stating, "they have always gone into cahoots against me[.]" 
However, Pomonis admitted he has no evidence of any plot by his former wives against
him.

 C.Z., the boyfriend of Allison's oldest daughter, W.P., testified he was with W.P.
just before she and her sisters were to leave for Florida with their father. According to
C.Z., the girls were shopping for clothes for the trip, and they all went home between 2:30
and 3:00 p.m. to get ready for the trip. C.Z. did not leave the house until about 9:45 p.m.
that evening, and he never heard anyone ring the doorbell, honk the horn, or knock on the
door. C.Z. testified that the children were at home until around nine o'clock, when they
went to eat. On cross-examination, C.Z. admitted that he works for a company owned by
Allison's current husband. C.Z. testified he knew nothing of a school party that weekend.

 Allison testified that she agreed Pomonis could pick up the children early, and she
volunteered to pick up N.P. Allison stated she also agreed to allow Pomonis to pick up
the children later than six o'clock. According to Allison, when she informed Pomonis that
she had been unable to pick up N.P., he became irate.

 Allison testified she took the children to eat at approximately nine o'clock on Friday
night, and they arrived home at about ten o'clock. Allison stated Pomonis never came to
her house after they returned from eating. Allison testified, "the children were always,
in my opinion, eligible and able to go to Florida. I took them shopping for the trip. I
packed them. I had them ready. I in no way denied them to go. Nick told me himself
that the children were ineligible to go. They were uninvited." Allison also stated, "I was
willing to let the children go. I never ever kept the children from him, from going. And
my testimony is he never showed up while I was at the house." Allison stated she did not
surrender the children because "[Pomonis] was not there to get them." She denied telling
Pomonis that she would not be there with the girls when he arrived.


 Allison testified that she offered to bring the children to Houston that night herself
or she would take them to Houston the next morning, but Pomonis refused to agree, saying
"they were going to do it his way or there would be punishment." Allison stated she drove
the children to Houston the next morning, but she was unable to deliver the children to
Pomonis because she got lost in Houston. Allison stated she made numerous attempts to
call Rene, Pomonis, and Pomonis's family for directions, but she could not reach them.

 Allison denied having a plan with Rene to prevent Pomonis from spending
Christmas vacation with the children. She also stated, "Today, in this courtroom, is the
first time I have ever heard of a party." According to Allison, she has never prevented
or attempted to prevent the children from seeing Pomonis. Allison also denied interfering
with Pomonis's previous vacations. According to Allison, after the children did not go
with Pomonis on Friday night, they were not invited to attend the post-graduation party. 
 The trial court found that Allison violated the possession order by failing "to allow
Nick Spero Pomonis possession of the children the subject of this suit from 6:00 p.m. the
day that the children were dismissed from school for the Christmas school vacation and
ending at 3:00 p.m. on December 24, 2004." The trial court then found Allison guilty of
criminal contempt and assessed punishment at confinement in the county jail of Hardin
County, Texas, for six months. However, the trial court suspended the commitment for
thirty-six months on the conditions that Allison would "comply with the terms of the
visitation order in the future" and reimburse Pomonis the sum of $1,510.80 for the airline
tickets.

Allison's Issues Two and Four


 In her second and fourth issues, Allison contends the evidence is legally insufficient
to support finding Allison in contempt and ordering her to pay "a portion of the cost of
[Pomonis's] missed vacation." We consider issues two and four together. 

 A petition for a writ of habeas corpus is a collateral attack on the trial court's order,
and the relator must demonstrate that the order is void. Ex parte Ramon, 821 S.W.2d 711,
713 (Tex. App.--San Antonio 1991, orig. proceeding). The trial court is the sole judge
of the witnesses' credibility and the weight to be given their testimony. In re Pruitt, 6
S.W.3d 363, 364 (Tex. App.--Beaumont 1999, orig. proceeding). We do not review the
sufficiency of the evidence to support the trial court's action. Id. "As a reviewing court,
we may only determine if the trial court's contempt findings are so completely without
evidentiary support that the trial court's judgment is void because it deprives a relator of
liberty without due process of law." Id. (citing Ex parte Helms, 152 Tex. 480, 259
S.W.2d 184, 186 (1953) (orig. proceeding)). Therefore, we interpret Allison's second and
fourth issues as alleging that the trial court's judgment is void because the trial court's
findings completely lack evidentiary support.

 Although the testimony of Pomonis and Allison disagreed on certain issues, both
parties testified that Pomonis did not arrive at 6:00 p.m. to pick up the children. The
parties also agree that Allison had agreed to allow Pomonis to pick up the children both
earlier and later than 6:00 p.m. Nothing in the possession order requires Allison to wait
at home for over three hours past the scheduled time for Pomonis to collect the children. 
The uncontroverted evidence demonstrated that Pomonis did not arrive to pick up the
children at 6:00 p.m. as provided by the possession order. Both parties also testified that
Allison attempted to deliver the children to Pomonis in Houston by driving them there
herself the next day (Saturday). Pomonis testified that the flight to Key West was not
scheduled to depart until Sunday. Furthermore, both Pomonis and Allison testified that
Pomonis declined to take the children on vacation to punish them for not being there when
he arrived at Allison's house to pick them up. Therefore, we find the trial court's order
finding Allison in contempt for not relinquishing the children at 6:00 p.m. and requiring
her to pay $1,510.84 for the children's unused airline tickets completely lacks evidentiary
support, and is therefore void. See Helms, 152 Tex. at 482, 259 S.W.2d at 186. We
grant the petition for writ of habeas corpus.

 WRIT GRANTED.

 PER CURIAM

 

Submitted on May 1, 2006

Opinion Delivered June 15, 2006

Before McKeithen, C.J., Kreger and Horton, JJ.
1. Habeas corpus is the proper vehicle for challenging contempt when the relator is
confined. See Cadle Co. v. Lobingier, 50 S.W.3d 662, 671 (Tex. App.--Fort Worth 2001,
pet. denied). The concepts of "confinement" and "restraint" encompass incarceration,
release on bail or bond, release on probation or parole, or any other restraint on personal
liberty. Rodriguez v. Court of Appeals, 769 S.W.2d 554, 558 (Tex. Crim. App. 1989);
Ex parte Davis, 748 S.W.2d 555, 557 (Tex. App.--Houston [1st Dist.] 1988, pet. ref'd). 
The trial court placed relator on probation. Therefore, although relator filed this case as
a petition for writ of mandamus, we construe it as a habeas corpus proceeding. See Ex
parte Casillas, 25 S.W.3d 296, 297 n.1 (Tex. App.--San Antonio 2000, orig. proceeding)
(Court of Appeals construed relator's "petition for writ of habeas corpus and/or writ of
mandamus" as a petition for writ of habeas corpus because relator was confined.).